UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JUAN CARLOS DELGADILLO IBARRA,<br><br>             Plaintiff,<br><br>     v.<br><br>KILOLO KIJAKAZI, ACTING COMMISSIONER OF SOCIAL SECURITY,<br><br>             Defendant. | Case No.  1:21-cv-00763-JLT-HBK<br><br>FINDINGS AND RECOMMENDATIONS TO GRANT PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT, DENY DEFENDANT'S MOTION FOR SUMMARY JUDGMENT, AND REMAND CASE TO COMMISSIONER[1]<br><br>FOURTEEN-DAY OBJECTION PERIOD<br><br>(Doc. No.  19) |

Juan Carlos Delgadillo Ibarra ("Plaintiff") seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner" or "Defendant") denying his application for disability insurance benefits under the Social Security Act.  (Doc. No. 1).  The matter is currently before the Court on the parties' briefs, which were submitted without oral argument.  (Doc. Nos. 19, 21).  For the reasons set forth more fully below, the undersigned recommends the district court grant Plaintiff's motion for summary judgment and remand for further administrative proceedings.

///

---

[1] This matter was referred to the undersigned pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule 302 (E.D. Cal. 2022).

# I. JURISDICTION

Plaintiff protectively filed for disability insurance benefits October 23, 2018. (AR 255-56). At the hearing, the alleged onset date was amended to March 31, 2016. (AR 47). Benefits were denied initially (AR 123-28), and upon reconsideration (AR 130-35). Plaintiff appeared before Administrative Law Judge Kathryn Burgchardt ("ALJ") on November 5, 2020. (AR 43-68). Plaintiff was represented by counsel and testified at the hearing. (*Id*.). On November 27, 2020, the ALJ issued an unfavorable decision (AR 15-42), and on April 6, 2021 the Appeals Council denied review (AR 1-8). The matter is now before this Court pursuant to 42 U.S.C. § 405(g).

# II. BACKGROUND

The facts of the case are set forth in the administrative hearing and transcripts, the ALJ's decision, and the briefs of Plaintiff and Commissioner. Only the most pertinent facts are summarized here.

Plaintiff was 49 years old at the time of the hearing. (AR 46). He completed tenth grade and later received a GED. (AR 48). He lives with his wife and teenage son. (AR 48-49). Plaintiff has work history as a farm worker. (AR 53, 60). Plaintiff testified that he has constant pain and numbness in his feet, cannot walk a half a block, elevates his feet throughout the day, and can only sit for 10 to 15 minutes before he has to stand up and change positions. (AR 56). He wears prescription shoes and ankle braces every day, and takes prescription pain medication. (AR 56-57). Plaintiff reported he will undergo recommended back surgery when his blood sugar levels go down. (AR 58).

# III. STANDARD OF REVIEW

A district court's review of a final decision of the Commissioner of Social Security is governed by 42 U.S.C. § 405(g). The scope of review under § 405(g) is limited; the Commissioner's decision will be disturbed "only if it is not supported by substantial evidence or is based on legal error." *Hill v. Astrue*, 698 F.3d 1153, 1158 (9th Cir. 2012). "Substantial evidence" means "relevant evidence that a reasonable mind might accept as adequate to support a conclusion." *Id*. at 1159 (quotation and citation omitted). Stated differently, substantial evidence

equates to "more than a mere scintilla[,] but less than a preponderance." *Id.* (quotation and citation omitted). In determining whether the standard has been satisfied, a reviewing court must consider the entire record as a whole rather than searching for supporting evidence in isolation. *Id.*

In reviewing a denial of benefits, a district court may not substitute its judgment for that of the Commissioner. "The court will uphold the ALJ's conclusion when the evidence is susceptible to more than one rational interpretation." *Tommasetti v. Astrue*, 533 F.3d 1035, 1038 (9th Cir. 2008). Further, a district court will not reverse an ALJ's decision on account of an error that is harmless. *Id.* An error is harmless where it is "inconsequential to the [ALJ's] ultimate nondisability determination." *Id.* (quotation and citation omitted). The party appealing the ALJ's decision generally bears the burden of establishing that it was harmed. *Shinseki v. Sanders*, 556 U.S. 396, 409-10 (2009).

## IV.  FIVE-STEP SEQUENTIAL EVALUATION PROCESS

A claimant must satisfy two conditions to be considered "disabled" within the meaning of the Social Security Act. First, the claimant must be "unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(A). Second, the claimant's impairment must be "of such severity that he is not only unable to do his previous work[,] but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 423(d)(2)(A).

The Commissioner has established a five-step sequential analysis to determine whether a claimant satisfies the above criteria. *See* 20 C.F.R. § 404.1520(a)(4)(i)-(v). At step one, the Commissioner considers the claimant's work activity. 20 C.F.R. § 404.1520(a)(4)(i). If the claimant is engaged in "substantial gainful activity," the Commissioner must find that the claimant is not disabled. 20 C.F.R. § 404.1520(b).

If the claimant is not engaged in substantial gainful activity, the analysis proceeds to step two. At this step, the Commissioner considers the severity of the claimant's impairment. 20

C.F.R. § 404.1520(a)(4)(ii). If the claimant suffers from "any impairment or combination of impairments which significantly limits [his or her] physical or mental ability to do basic work activities," the analysis proceeds to step three. 20 C.F.R. § 404.1520(c). If the claimant's impairment does not satisfy this severity threshold, however, the Commissioner must find that the claimant is not disabled. 20 C.F.R. § 404.1520(c).

At step three, the Commissioner compares the claimant's impairment to severe impairments recognized by the Commissioner to be so severe as to preclude a person from engaging in substantial gainful activity. 20 C.F.R. § 404.1520(a)(4)(iii). If the impairment is as severe or more severe than one of the enumerated impairments, the Commissioner must find the claimant disabled and award benefits. 20 C.F.R. § 404.1520(d).

If the severity of the claimant's impairment does not meet or exceed the severity of the enumerated impairments, the Commissioner must pause to assess the claimant's "residual functional capacity." Residual functional capacity (RFC), defined generally as the claimant's ability to perform physical and mental work activities on a sustained basis despite his or her limitations, 20 C.F.R. § 404.1545(a)(1), is relevant to both the fourth and fifth steps of the analysis.

At step four, the Commissioner considers whether, in view of the claimant's RFC, the claimant is capable of performing work that he or she has performed in the past (past relevant work). 20 C.F.R. § 404.1520(a)(4)(iv). If the claimant is capable of performing past relevant work, the Commissioner must find that the claimant is not disabled. 20 C.F.R. § 404.1520(f). If the claimant is incapable of performing such work, the analysis proceeds to step five.

At step five, the Commissioner considers whether, in view of the claimant's RFC, the claimant is capable of performing other work in the national economy. 20 C.F.R. § 404.1520(a)(4)(v). In making this determination, the Commissioner must also consider vocational factors such as the claimant's age, education and past work experience. 20 C.F.R. § 404.1520(a)(4)(v). If the claimant is capable of adjusting to other work, the Commissioner must find that the claimant is not disabled. 20 C.F.R. § 404.1520(g)(1). If the claimant is not capable of adjusting to other work, analysis concludes with a finding that the claimant is disabled and is

therefore entitled to benefits.  20 C.F.R. § 404.1520(g)(1).

The claimant bears the burden of proof at steps one through four above.  *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999).  If the analysis proceeds to step five, the burden shifts to the Commissioner to establish that (1) the claimant is capable of performing other work; and (2) such work "exists in significant numbers in the national economy."  20 C.F.R. § 404.1560(c)(2); *Beltran v. Astrue*, 700 F.3d 386, 389 (9th Cir. 2012).

## V.     ALJ'S FINDINGS

At step one, the ALJ found that Plaintiff has not engaged in substantial gainful activity since March 31, 2016, the alleged onset date.  (AR 24).  At step two, the ALJ found that Plaintiff has the following severe impairments: lumbar stenosis, diabetes mellitus, peripheral neuropathy, loss of central visual acuity, and obesity.  (AR 24).  At step three, the ALJ found that Plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of a listed impairment.  (AR 25).  The ALJ then found that Plaintiff has the RFC

> to perform light work as defined in 20 CFR 404.1567(b), except the claimant can only lift or carry up to 10 pounds frequently, and 20 pounds occasionally.  He can stand or walk with normal breaks for a total of 6 hours in an 8-hour workday.  He can sit with normal breaks for a total of 6 hours in an 8-hour workday.  He can perform pushing and pulling motions with upper and lower extremities within the weight restrictions given.  He should avoid concentrated exposure to unprotected heights, moving mechanical machinery, and concentrated exposure to vibrations.  He can perform postural activities frequently, and that would be climbing of ramps or stairs, balancing, stooping, crouching, kneeling, and crawling, but he should not climb any ladders, ropes or scaffolds on the job.  He should avoid concentrated exposure to extreme cold and concentrated exposure to extreme heat.  He should not do any conveyer belt work from right to left.

(AR 27).  At step four, the ALJ found that Plaintiff is unable to perform past relevant work.  (AR 35).  At step five, the ALJ found that considering Plaintiff's age, education, work experience, and RFC, there are jobs that exist in significant numbers in the national economy that he can perform, including office helper, fast food worker, and housekeeping cleaner.  (AR 35-36).  On that basis, the ALJ concluded that Plaintiff has not been under a disability, as defined in the Social Security Act, from March 31, 2016, through the date of the decision.  (AR 36).

////

## VI. ISSUES

Plaintiff seeks judicial review of the Commissioner's final decision denying him disability insurance benefits under Title II of the Social Security Act. (Doc. No. 1). Plaintiff raises the following issues for this Court's review:

1. Whether the ALJ properly considered the medical opinion evidence; and

2. Whether the ALJ properly considered Plaintiff's subjective complaints.

(Doc. No. 19 at 14-23).

## VII. DISCUSSION

### A. Medical Opinion Evidence

For claims filed on or after March 27, 2017, new regulations apply that change the framework for how an ALJ must evaluate medical opinion evidence. *Revisions to Rules Regarding the Evaluation of Medical Evidence*, 2017 WL 168819, 82 Fed. Reg. 5844-01 (Jan. 18, 2017); 20 C.F.R. § 404.1520c. The new regulations provide that the ALJ will no longer "give any specific evidentiary weight…to any medical opinion(s)…" *Revisions to Rules*, 2017 WL 168819, 82 Fed. Reg. 5844, at 5867-68; see 20 C.F.R. § 404.1520c(a). Instead, an ALJ must consider and evaluate the persuasiveness of all medical opinions or prior administrative medical findings from medical sources. 20 C.F.R. § 404.1520c(a) and (b). The factors for evaluating the persuasiveness of medical opinions and prior administrative medical findings include supportability, consistency, relationship with the claimant (including length of the treatment, frequency of examinations, purpose of the treatment, extent of the treatment, and the existence of an examination), specialization, and "other factors that tend to support or contradict a medical opinion or prior administrative medical finding" (including, but not limited to, "evidence showing a medical source has familiarity with the other evidence in the claim or an understanding of our disability program's policies and evidentiary requirements"). 20 C.F.R. § 404.1520c(c)(1)-(5).

Supportability and consistency are the most important factors, and therefore the ALJ is required to explain how both factors were considered. 20 C.F.R. § 404.1520c(b)(2). Supportability and consistency are explained in the regulations:

(1) Supportability. The more relevant the objective medical evidence and

>supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be.
>
>(2) Consistency. The more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be.

20 C.F.R. § 404.1520c(c)(1)-(2). The ALJ may, but is not required to, explain how the other factors were considered. 20 C.F.R. § 404.1520c(b)(2). However, when two or more medical opinions or prior administrative findings "about the same issue are both equally well-supported ... and consistent with the record ... but are not exactly the same," the ALJ is required to explain how "the other most persuasive factors in paragraphs (c)(3) through (c)(5)" were considered. 20 C.F.R. § 404.1520c(b)(3).

The Ninth Circuit has additionally held that the new regulatory framework displaces the longstanding case law requiring an ALJ to provide "specific and legitimate" or "clear and convincing" reasons for rejecting a treating or examining doctor's opinion. *Woods v. Kijakazi*, 32 F.4th 785 (9th Cir. 2022). Nonetheless, in rejecting an examining or treating doctor's opinion as unsupported or inconsistent, an ALJ must still provide an explanation supported by substantial evidence. *Id*. This means that the ALJ "must 'articulate ... how persuasive' [he or she] finds 'all of the medical opinions' from each doctor or other source ... and 'explain how [he or she] considered the supportability and consistency factors' in reaching these findings." *Id*. (citing 20 C.F.R. §§ 404.1520c(b), 404.1520(b)(2)).

Plaintiff generally argues the ALJ failed to provide adequate reasons based on substantial evidence for discounting the medical opinions of Plaintiff's examining physician while finding persuasive the non-examining opinion of the state agency reviewing physician. (Doc. No. 19 at 14). Dr. Shahram Ehteshami performed a consultative neurological examination of Plaintiff in February 2019 and opined that he could perform light level activity with 6 hours of sitting and 4 hours of standing and walking in an 8 hour day; occasional lifting of 20 pounds; frequent lifting of 10 pounds; and needed no assistive device for ambulation. (AR 602-05). The ALJ found Dr. Ehteshami's opinion to be overall "somewhat persuasive" because it was a one-time examination,

his review of the overall medical record was "very limited," and his opinion was "only partly consistent with the objective examination findings that day, and with the current record as a whole." (AR 32-33). In support of this finding, the ALJ generally cited examination findings that Plaintiff "generally had normal gait and strength during his examinations throughout the medical record." (AR 33). Further, the ALJ found the cited records

> demonstrate[] that [Plaintiff] is capable of no more than light exertional work. Thus, the undersigned agrees with Dr. Ehteshami in this regard. However, the undersigned does not see a need to reduce [Plaintiff's] standing/walking from the typical amount of 6 hours associated with light exertional work. In limiting [Plaintiff] to standing/walking for up to 4 hours, Dr. Ehteshami over-relied on the claimant's subjective complaints. The claimant's numerous objective physical examination findings of generally normal gait and strength do not support a reduced standing/walking. Additionally, while [Plaintiff] has diabetes with peripheral neuropathy, especially in his feet, as well as other feet issues like plantar fasciitis and pes planus, [Plaintiff] has not required assistive devices like a cane to ambulate. He appears to ambulate well with just orthopedic shoes and an ankle brace.

(AR 33).

Plaintiff argues the ALJ's rejection of Dr. Ehteshami's opinion that Plaintiff was limited to four hours of walking, as opposed to the "typical amount of 6 hours associated with light exertional work," was not supported by substantial evidence. (Doc. No. 19 at 18-20). The Court agrees. Under the new regulations, the ALJ is required to explain how she considered the supportability and consistency factors as defined in 20 C.F.R. § 404.1520c(c)(1)-(2). Here, the ALJ found the limitation opined by Dr. Ehteshami that Plaintiff's ability to stand and walk for only up to 4 hours, as opposed to the 6 hours opined by the state agency physicians and typically associated with light work, was not well supported because it "over-relied on Plaintiff's subjective complaints"; the "numerous objective physical examination findings of generally normal gait and strength do not support a reduced standing/walking"; and Plaintiff has not required an assistive device to ambulate and ambulates "well" with orthopedic shoes and an ankle brace. (AR 33).

First, in considering the supportability factor, presumably "[a]n ALJ may reject a [] physician's opinion if it is based 'to a large extent' on claimant's self-reports that have been

8

properly discounted as incredible" as opposed to objective findings and supporting explanations. *Tommasetti*, 533 F.3d at 1041.  However, in this case, the ALJ failed to consider that Dr. Ehteshami did examine Plaintiff and found he walks without limping; has mild heel-to-toe walking ataxia; does not use an assistive device; has normal strength in upper and lower extremities; has absent pin prick sensation in his right lower limb and both feet; has reduced to absent vibration sense in his right limbs; has absent knee and ankle reflexes bilaterally and no plantar response; and had pain reduced range of motion and pain upon testing in his hips and knees.  (AR 604).  Moreover, as discussed below, the ALJ's rejection of Plaintiff's symptom claims was not supported by clear and convincing reasons.  Thus, to the extent the ALJ found Dr. Ehteshami's opinion less persuasive based on his alleged over-reliance on Plaintiff's properly discounted symptom claims, this finding is not supported by substantial evidence.

      Second, with regard to the consistency factor, contrary to Defendant's argument that Plaintiff "ignores" the ALJ's "express finding" that there were "numerous objective physical examination findings of generally normal gait and strength" throughout the record, Plaintiff correctly notes that Dr. Ehteshami similarly found Plaintiff did not walk with a limp and had normal strength in his extremities.  (*See* AR 604).  Thus, the Court is unable to perceive any inconsistency between the "generally normal gait and strength" in examinations cited by the ALJ and Dr. Ehteshami's own objective findings, such that it would support discounting Dr. Ehteshami's opinion specifically as to Plaintiff's ability to stand and walk for only four hours per day as opposed to six.  In addition, aside from the general reference to findings of normal gait and strength, the ALJ's reliance on a string cite of examination findings throughout the record (*See* AR 33) without further explanation does not rise to the level of substantial evidence supporting the rejection of this portion of Dr. Ehteshami's opinion because it was inconsistent with other medical sources.  *Reddick v. Chater*, 157 F.3d 715, 725 (9th Cir. 1998) (when considering the medical opinion evidence, the ALJ must do more than state a conclusion; rather, the ALJ must "set forth his own interpretations and explain why they, rather than the doctors', are correct."). As noted above, the Ninth Circuit recently clarified that under the new regulations for considering medical evidence, "an ALJ cannot reject an examining or treating doctor's opinion as

unsupported or inconsistent without providing an explanation supported by substantial evidence. The agency must 'articulate … how persuasive' it finds 'all of the medical opinions' from each doctor or other source, and 'explain how [it] considered the supportability and consistency factors' in reaching these findings." *Woods*, 32 F.4th at 792 (internal citations omitted). Here, the ALJ fails to explain how the specific limitation assessed by Dr. Ehteshami regarding Plaintiff's ability to stand and walk is inconsistent with "objective findings" in the medical evidence of record, which are notably comprised of findings not dissimilar to those in Dr. Ehteshami's own treatment notes. This is error.

Finally, the ALJ's general rejection of Dr. Ehteshami's opinion because it was only a one-time examination and she performed only a "limited" record review, are not valid reasons, standing alone, to discount the opinion. First, as noted by Plaintiff, Dr. Ehteshami's opinion specifically noted that his "recommendations are according to the findings of my objective examination of [Plaintiff]." (Doc. No. 19 at 20 (citing AR 605)). Pursuant to the new regulatory framework in considering medical opinion evidence, "[a] medical source may have a better understanding of [a claimant's] impairment(s) if he or she examines you than if the medical source only reviews evidence in your folder." 20 C.F.R. §§ 416.920c(c)(3)(v). Moreover, while the ALJ may consider the frequency of a claimant's visits with the medical source, and "evidence showing a medical source has familiarity with the other evidence in the claim," these are not sole or determinative factors in considering medical source opinions. 20 C.F.R. §§ 416.920c(c)(3)(ii), 416.920c(c)(5). Rather, as noted above, consistency and supportability are the most important factors considered by the ALJ when evaluating the medical opinions. Here, as discussed above, the ALJ's rejection of Dr. Ehteshami's opinion as to Plaintiff's ability to stand and walk because it "over-relied" on Plaintiff's subjective complaints as opposed to objective medical evidence of "generally normal gait and strength" is not supported by substantial evidence. On remand, the ALJ must properly consider Dr. Ehteshami's opinion along with the relevant medical opinion evidence.[2]

---

[2] Plaintiff additionally argues the ALJ's finding that the state agency reviewing opinions by Dr. Leslie E. Arnold and Dr. Robert E. Vestal are persuasive is not supported by substantial evidence. (Doc. No. 19 at

**B. Symptom Claims**

An ALJ engages in a two-step analysis when evaluating a claimant's testimony regarding subjective pain or symptoms. *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035-36 (9th Cir. 2007). The ALJ first must determine whether there is "objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged." *Id*. (internal quotation marks omitted). "The claimant is not required to show that his impairment could reasonably be expected to cause the severity of the symptom he has alleged; he need only show that it could reasonably have caused some degree of the symptom." *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009) (internal quotation marks omitted).

Second, "[i]f the claimant meets the first test and there is no evidence of malingering, the ALJ can only reject the claimant's testimony about the severity of the symptoms if [the ALJ] gives 'specific, clear and convincing reasons' for the rejection." *Ghanim v. Colvin*, 763 F.3d 1154, 1163 (9th Cir. 2014) (internal citations and quotations omitted). "General findings are insufficient; rather, the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints." *Id*. (quoting *Lester*, 81 F.3d at 834); *Thomas v. Barnhart*, 278 F.3d 947, 958 (9th Cir. 2002) ("[T]he ALJ must make a credibility determination with findings sufficiently specific to permit the court to conclude that the ALJ did not arbitrarily discredit claimant's testimony."). "The clear and convincing [evidence] standard is the most demanding required in Social Security cases." *Garrison v. Colvin*, 759 F.3d 995, 1015 (9th Cir. 2014) (quoting *Moore v. Comm'r of Soc. Sec. Admin*., 278 F.3d 920, 924 (9th Cir. 2002)).

Here, the ALJ found Plaintiff's medically determinable impairments could reasonably be expected to cause some of the alleged symptoms; however, Plaintiff's "statements concerning the intensity, persistence, and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record." for two reasons: (1) the objective medical record "as a whole" does not support the alleged severity of Plaintiff's impairments, and (2)

---

16-18; AR 98-99, 110-12). As discussed *supra*, the ALJ must reconsider the examining opinion of Dr. Ehteshami along with all relevant medical opinion evidence on remand, including the opinions of Dr. Arnold and Dr. Vestal.

1  Plaintiff's daily activities do not fully support the subjective complaints made by Plaintiff.  (AR
2  28-32).

3  The ALJ may consider a claimant's activities that undermine reported symptoms.  *Rollins*
4  *v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001).  However, the Ninth Circuit has "repeatedly
5  warned that ALJs must be especially cautious in concluding that daily activities are inconsistent
6  with testimony about pain, because impairments that would unquestionably preclude work and all
7  the pressures of a workplace environment will often be consistent with doing more than merely
8  resting in bed all day."  *Garrison*, 759 F.3d at 1016; *Vertigan v. Halter*, 260 F.3d 1044, 1050 (9th
9  Cir. 2001) ("This court has repeatedly asserted that the mere fact that a plaintiff has carried on
10 certain daily activities, such as grocery shopping, driving a car, or limited walking for exercise,
11 does not in any way detract from her [testimony] as to her overall disability.").  Plaintiff argues
12 this was not a clear and convincing reason, supported by substantial evidence, to discount his
13 symptom claims.  (Doc. No. 19 at 21-22).  The Court agrees.

14 Here, in support of this finding, the ALJ cited Plaintiff's testimony and function reports
15 indicating that (1) Plaintiff was able to watch television which requires concentration, "involves
16 remaining in a certain position for extended periods," and involves functional vision; (2) he was
17 "capable of driving"; (3) he reported that "when wearing corrective eyewear his vision problems
18 did not generally limit his activity; (4) he obtained his GED "around and/or within the period at
19 issue";[3] (5) he lives with his wife and teenage child and is left "on his own" at times; (6) he sees
20 family members in person and on video calls; (7) he helps his son with homework; (8) he walks
21 slowly in his yard for exercise; (9) he goes out to eat once a month and to church twice a month;
22 (10) his wife does most household chores but he "may wash one or two plates."  (AR 28).
23 However, Plaintiff also testified that he cannot walk a half a block, he elevates his feet throughout
24 the day, he can only sit for 10 to 15 minutes before he has to change positions, his wife does the
25 cleaning because of his pain, his wife cooks for him, and his son helps him with yardwork; and in
26

---

27 [3] The Court notes that while Plaintiff testified that he has a GED, Defendant does not cite, nor Court is
    able to discern, any testimony that Plaintiff achieved his GED "around and/or around the period at issue."
28 (*See* AR 28, 49).

the function reports cited by the ALJ,  Plaintiff noted that he only drove for short distances when necessary, doesn't carry or lift anything, and does not do housework or cooking. (AR 54-56, 292-94).  As noted by Plaintiff, he "did not testify to an unimpaired ability to do household chores, self-care, and errands, but that he has limited ability to perform these tasks and frequently needs to rest and modify his activity level because of pain.  In fact, Plaintiff testified that the pain and numbness in his feet is worse when standing or walking and that he sits down to rest, he keeps his feet elevated because that is most comfortable for him.  Thus, Plaintiff's daily activities are consistent with his alleged limitations."  (Doc. No. 19 (citing AR 56)).  The ALJ cited no evidence suggesting that the limited activities cited in the decision were performed by Plaintiff in a manner transferable to a work setting, particularly with regard to Plaintiff's ability to stand, walk, and sit, nor did the ALJ describe activities that contradict his reported symptom claims. *Orn v. Astrue*, 495 F.3d 625, 639 (9th Cir. 2007).  Thus, this is not substantial evidence to support the ALJ's reasoning.

Furthermore, in considering Plaintiff's symptom claims, the ALJ must specifically identify the statements he or she finds not to be credible, and the evidence that allegedly undermines those statements. *Holohan v. Massanari*, 246 F.3d 1195, 1208 (9th Cir. 2001).  "To ensure that our review of the ALJ's credibility determination is meaningful, and that the claimant's testimony is not rejected arbitrarily, we require the ALJ to specify which testimony she finds not credible, and then provide clear and convincing reasons, supported by the evidence in the record, to support that credibility determination." *Brown-Hunter v. Colvin*, 806 F.3d 487, 494 (9th Cir. 2015) (noting the ALJ did not specifically identify any inconsistencies between the claimant's testimony and the record; rather, "she simply stated her non-credibility conclusion and then summarized the medical evidence supporting her RFC determination.").  Here, the ALJ summarized Plaintiff's testimony but did not identify the specific testimony that she found not to be credible, nor did she offer explanations for why the cited evidence of Plaintiff's ability to perform basic activities of daily living undermines Plaintiff's symptom claims, particularly as to his ability to stand and walk.  Thus, the ALJ's finding that Plaintiff's daily activities were inconsistent with his claimed limitations was not a clear and convincing reason, supported by

substantial evidence, to discount his symptom claims.

Second, the ALJ found Plaintiff's symptom claims are unsupported by "the objective evidence of record," including, but not limited to, ongoing MRI imaging of the lumbar spine that resulted in a recommendation that Plaintiff undergo lumbar surgery consisting of a lumbar laminectomy decompression/lumbar decompressive laminectomy of L4-L5; an EMG/NCS that revealed moderately severe axonal sensorimotor polyneuropathy, and mild and chronic bilateral L5 radiculopathy; glaucoma and restricted vision in both eyes; and a long history of complications from diabetes. (AR 29-31). However, regardless of whether the ALJ erred in finding Plaintiff's symptom claims were not corroborated by objective evidence, it is well-settled in the Ninth Circuit that an ALJ may not discredit a claimant's pain testimony and deny benefits *solely* because the degree of pain alleged is not supported by objective medical evidence. *Rollins*, 261 F.3d at 857 (emphasis added))); *Bunnell v. Sullivan*, 947 F.2d 341, 346-47 (9th Cir. 1991); *Fair v. Bowen*, 885 F.2d 597, 601 (9th Cir. 1989). As discussed above, the additional reason given by the ALJ for discounting Plaintiff's symptom claims was not supported by substantial evidence. Thus, because lack of corroboration by the objective evidence cannot stand alone as a basis for rejecting Plaintiff's symptom claims, the ALJ's finding is inadequate.

Defendant argues that the ALJ also considered Plaintiff's "treatment history and prognosis" as a reason for discounting his symptom claims. (Doc. No. 21 at 15). In support of this argument, Defendant cites the ALJ's findings that Plaintiff's "blood sugars stabilized as he became better treatment compliant" and Plaintiff's self-report at a single treatment visit that his neck pain was "resolved." (AR 29-30, 712). Impairments that can be effectively controlled with medication are not disabling for the purposes of determining eligibility for benefits. *See Warre v. Comm'r of Soc. Sec. Admin.*, 439 F.3d 1001, 1006 (9th Cir. 2006) (internal citations omitted); *see also Tommasetti*, 533 F.3d at 1040 (a favorable response to treatment can undermine a claimant's complaints of debilitating pain or other severe limitations). However, even assuming, arguendo, that this was a properly supported reason to reject Plaintiff's symptom claims as to his claimed diabetes and cervical spine pain, it does not rise to the level of substantial evidence to support discounting all of Plaintiff's symptom claims, particularly with regard to his back pain and visual

acuity.

The Court concludes that the ALJ did not provide clear and convincing reasons, supported by substantial evidence, for rejecting Plaintiff's symptom claims.  On remand, the ALJ must reconsider Plaintiff's symptom claims.

**C.  Remedy**

The Court finds that further administrative proceedings are appropriate.  *See Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1103-04 (9th Cir. 2014) (remand for benefits is not appropriate when further administrative proceedings would serve a useful purpose).  Here, the ALJ improperly considered the medical evidence of record and Plaintiff's symptom claims, which calls into question whether the assessed RFC, and resulting hypothetical propounded to the vocational expert, are supported by substantial evidence.  "Where," as here, "there is conflicting evidence, and not all essential factual issues have been resolved, a remand for an award of benefits is inappropriate."  *Treichler*, 775 F.3d at 1101.  Instead, the undersigned recommends remanding this case for further proceedings.  On remand, the ALJ should reevaluate all relevant medical opinions, as well as Plaintiff's symptom claims.  If necessary, the ALJ should order additional consultative examinations and, if appropriate, take additional testimony from medical experts.  The ALJ should conduct a new sequential analysis, reassess Plaintiff's RFC and, if necessary, take additional testimony from a vocational expert which includes all of the limitations credited by the ALJ.

Accordingly, it is **RECOMMENDED**:

1. Plaintiff's Motion for Summary Judgment (Doc. No. 19) be GRANTED.
2. Defendant's Cross Motion for Summary Judgment (Doc. No. 21) be DENIED.
3. Pursuant to sentence four of 42 U.S.C.§ 405(g), the Court REVERSE the Commissioner's decision and REMAND this case back to the Commissioner of Social Security for further proceedings consistent with this Order.

**NOTICE TO PARTIES**

These findings and recommendations will be submitted to the United States district judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(1). Within fourteen (14)

days after being served with these findings and recommendations, a party may file written objections with the Court.  The document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  Parties are advised that failure to file objections within the specified time may result in the waiver of rights on appeal.  *Wilkerson v. Wheeler*, 772 F.3d 834, 838-39 (9th Cir. 2014) (citing *Baxter v. Sullivan*, 923 F.2d 1391, 1394 (9th Cir. 1991)).

Dated:     January 9, 2023

HELENA M. BARCH-KUCHTA
UNITED STATES MAGISTRATE JUDGE